MARIE HICKMAN, Appellee, v. M. G. HICKMAN, Appellant.

DIVORCE: Cruelty—Coarseness of Language and Conduct. Profane
1 and abusive language towards a frail woman, untrue and repulsive accusations concerning her conduct, neglect of her common comfort, with consequent injury to her health, may constitute cruel and inhuman conduct.

DIVORCE: Condonation. Condonation of cruelty is necessarily attended with the condition that the cruelty shall cease; and
2 especially is this true when the wife is the condoning party.

*Appeal from Hardin District Court.*—G. D. THOMPSON, Judge.

MARCH 15, 1920.

SUIT for divorce on the ground of cruel and inhuman treatment. There was a decree for the plaintiff. The defendant appeals.—*Affirmed.*

*Peisen & Soper,* for appellant.

*W. R. Williams,* for appellee.

EVANS, J.—The parties were married on January 22, 1914. The plaintiff was 18 years of age, and defendant 22. This suit was begun in August, 1917. Three children were born to the marriage. The plaintiff charged cruel treatment, endangering her life. The cruel treatment charged did not include personal violence. It did include harsh and profane language and threats, and much conduct indicating great disregard of the plaintiff's feelings. The plaintiff is

1. DIVORCE:
cruelty:
coarseness of
language and
conduct.

a frail person, whereas the defendant appears to be a strong, vigorous man. With three babes coming into her arms in as many years, it is not difficult to believe that the plaintiff has seen weariness and suffering, and has needed the solace of a husband's affection. If she did, in fact, have such affection, it was not demonstrative. The testimony in her behalf tends to show that he frequently called her a "son-of-a-bitch;" that the same epithet, with additional embellishments, was applied to her parents; that he threatened to leave her; that he invited her to leave him; that he told her he was done with her; that he neglected her at childbirth, especially on the last two occasions; that he repeatedly and consistently denied the paternity of each of his children; that, in some instances, this was done before the child was born.

The defendant affected great hostility to plaintiff's parents, and forbade their visiting the home, though they were, at times, much needed there. On one occasion, he assaulted plaintiff's stepfather, without apparent cause. As a witness, he testified as to his reason for his hostility to the stepfather to the effect that his wife had informed him of improper conduct of the stepfather toward the plaintiff before she was married, and also at a time shortly prior to the birth of her second child. The plaintiff denied that she ever gave such information to the defendant, and testified that there was no truth in such a charge. We think her denial in this regard should be taken as true.

The defendant denied all of the testimony on behalf of the plaintiff tending to show the cruel conduct. He also testified that their marriage relations had, as he supposed, been pleasant, and marred only by the hostility of plaintiff's parents. It is quite clear from the record, however, that, in the year 1916, he was secretly consulting an attorney, with reference to his marriage relations; also, that he was carrying on an affectionate correspondence with a former

sweetheart. He has undoubtedly given a false reason for his admitted hostility to the plaintiff's parents.

That the defendant's conduct has operated heavily upon the health of the plaintiff, and that she has endured great mental suffering and considerable bodily illness as a result of it, fairly appears.

The defendant pleads condonation. This plea is predicated upon the alleged fact that the parties cohabited, after the alleged cruelty. But cohabitation is not necessarily a condonation of cruel treatment, and this is especially so as to the wife. As the weaker vessel, and as the victim of such cruel treatment, she is often to be deemed as under some degree of duress. Her moral freedom of action is to be considered, on a plea of her condonation. Condonation, if proved, implies the condition that kindness shall supplant the cruelty complained of. Subsequent conjugal unkindness will avoid condonation, even though such unkindness be less than extreme cruelty, and be insufficient, of itself, as a ground of divorce. *Harrison v. Harrison*, 20 Ala. 629 (56 Am. Dec. 227) ; *Robbins v. Robbins*, 100 Mass. 150 (97 Am. Dec. 91) ; *Langdon v. Langdon*, 25 Vt. 678 (60 Am. Dec. 296).

2. DIVORCE:
   condonation.

Moreover, cruelty does not, of itself, become a ground of action. It must be endured by the aggrieved party to the breaking point, even though it continue for a long period of time. If the aggrieved party can endure it without danger to life, she has no cause of action for divorce. Up to that point, she can do nothing but condone. It is only when the cruelty becomes a danger to life that a cause of action accrues therefor.

Upon a careful examination of the entire record, we reach the conclusion that the trial court properly awarded

the decree to the plaintiff. The decree is, accordingly,—
*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.